UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**EVERT CALDWELL,**

**Plaintiff,**

**v.**                                                    **Case No: 6:14-cv-1701-Orl-41TBS**

**COMPASS ENTERTAINMENT GROUP
LLC, ROUNDER, INC., THOMAS A.
MCDONALD, GREGORY T.
MCDONALD and JEFFREY P.
KRANZDORF,**

**Defendants.**

_____/

## ORDER

THIS CAUSE is before the Court on Defendants' Motion for Summary Judgment (Doc. 173) and Plaintiff's Motion to Disregard Declarations Supporting Defendants' Motion for Summary Judgment ("Motion to Strike," Doc. 174). As set forth below, Defendants' Motion for Summary Judgment will be granted, and Plaintiff's Motion to Strike will be denied in part and denied as moot in part.

## I.    BACKGROUND

This case arises from a failed business venture. Defendant Gregory McDonald has an extensive background in the entertainment industry, including managing entertainers and producing television shows. (G. McDonald Decl., Doc. 172, ¶¶ 1–3[1]). Gregory McDonald's son,

_____

[1] Several declarations and exhibits were all submitted together at Docket Entry 172. Gregory McDonald's Declaration can be found at electronic page numbers 3–17, and the exhibits thereto can be found at electronic page numbers 18–45. Thomas McDonald's Declaration can be found at electronic page numbers 46–53, and Jeffrey Kranzdorf's Declaration can be found at electronic page numbers 54–56.

Defendant Thomas McDonald, was also involved in the family entertainment business. (T. McDonald Decl., Doc. 172, ¶ 1). Defendant Compass Entertainment Group, LLC ("Compass") is a company associated with Gregory McDonald and his family. (*See* G. McDonald Decl. ¶ 22 ("[M]y family formed Compass Entertainment Group, LLC, a Nevada limited liability company and establish[ed] offices in Las Vegas, Nevada."). Plaintiff was involved in creating a poker lifestyle magazine called Rounder. (*See* G. McDonald Decl. ¶ 6; *see also* Caldwell Decl., Doc. 175-1, ¶¶ 4–5).

In September or early October 2008, Plaintiff and Gregory McDonald began discussions regarding the possibility of developing a television series about the poker player lifestyle in connection with the Rounder magazine. (G. McDonald Decl. ¶¶ 6–7). During these discussions, Plaintiff explained that a trademark application had been filed for the name "Rounder." (Caldwell Decl. ¶ 7).  At this time, it was Gregory McDonald's understanding that Plaintiff owned the rights to the Rounder trademark, (G. McDonald Decl. ¶ 8), even though, according to Plaintiff, Plaintiff informed Gregory McDonald that the trademark rights were held by a company called Rounder Enterprises, Inc. ("REI"), (Caldwell Decl. ¶ 7). Regardless, it is undisputed that Plaintiff gave the impression that he was the controlling decision maker with regard to the Rounder trademark rights and the running of Rounder magazine. Specifically, although Plaintiff revealed that he had two partners involved in the Rounder magazine—J.H. "Hank" Sitton and Harrison Agnew—Plaintiff represented that he and his partners had a falling out and the partners were no longer involved with the business. (*See id.* ¶ 7 ("I explained to Greg McDonald . . . the situation where Hank Sitton had ceased funding the magazine and had no objection to me continuing the magazine); G. McDonald Decl. ¶ 8 ("[Plaintiff] told me that he had brought in two partners . . . and that he had been in a

fight with them because they would not provide additional capital . . . . [Plaintiff] said that his partners had left the business.")).

During their negotiations, Plaintiff and Gregory McDonald discussed entering co-production and licensing agreements. (G. McDonald Decl. ¶ 11; Caldwell Decl. ¶¶ 11, 19). The Co-Production Agreement outlines a business relationship between Compass, Compass's predecessor company Heritage Television Productions, Inc. ("Heritage"), and Plaintiff, which involved producing television programs and publishing magazines. (Co-Production Agreement, Ex. 1 to Second Am. Compl. ("SAC"), Doc. 61-1, at 1). Neither REI nor Sitton nor Agnew are parties to the Co-Production Agreement. (*Id.* at 1–2). The Co-Production Agreement also incorporates by reference the Exclusive Trademark/Tradename License Agreement (the "Rounderlife License Agreement," Ex. 2 to SAC, Doc. 61-1) and states that "[a]ll Programs produced under the [Rounderlife License Agreement] shall be owned and net receipts . . . arising thereunder shall be divided evenly (1/3 each) between and among Compass, Heritage and [Plaintiff]." (Co-Production Agreement at 1).

The parties to the Rounderlife License Agreement are Plaintiff's Company, Rounder Life Enterprises, Inc. ("Rounder Life Enterprises")—which is a separate and distinct company from REI—and Compass. (Rounderlife License Agreement at 3[2]). As with the Co-Production Agreement, neither REI nor Sitton nor Agnew are parties to the Rounderlife License Agreement. (*Id.*). While it is clear that Gregory McDonald believed he was negotiating for the rights to the mark associated with the Rounder magazine, the Rounderlife License Agreement does not mention the Rounder mark. Instead, the Rounderlife License Agreement purports to grant Compass an

---

[2] Because the Rounderlife License Agreement does not contain original page numbers, citations are to the electronic filing page number.

exclusive license for the use of the trademark "Rounderlife," (*Id.* at 3, 5)—which Plaintiff asserts is separate and distinct from the registered trademark "Rounder."[3]

Defendants assert that neither the Co-Production Agreement nor the Rounderlife License Agreement were ever entered. Gregory McDonald avers that he required approval from Sitton and Agnew before entering the agreement and that Sitton vehemently rejected the agreements. (G. McDonald Decl. ¶¶ 13–15; Oct. 11, 2008 Sitton E-mail, Ex. B to G. McDonald Decl.; Oct. 13, 2008 Sitton E-mail, Ex. D to G. McDonald Decl.). Plaintiff, on the other hand, asserts that the Co-Production Agreement and Rounderlife License Agreements were entered and that he never sought or needed approval from Sitton or Agnew because they were not parties to the agreements and had no rights in the Rounderlife mark. (*See* Caldwell Decl. ¶¶ 14–15).

Plaintiff instead asserts that the negotiations for use of the Rounderlife mark were separate from the negotiations for use of the Rounder mark and that Sitton was only involved in the latter. Along those lines, Plaintiff asserts that the agreement rejected by Sitton was a proposed agreement for use of the Rounder mark, not the use of the Rounderlife mark. It is unclear from the evidence what deal Sitton rejected. The only evidence provided, other than contradictory declarations, are the e-mails that Sitton sent to Plaintiff rejecting a proposed deal with Gregory McDonald. (Oct. 11, 2008 Sitton E-mail; Oct. 13, 2008 Sitton E-mail). However, neither party has provided the documentation of the "deal" Sitton references in his e-mails. Thus, at this stage, the Court must view the facts in the light most favorable to Plaintiff and assume that Sitton never saw or rejected the Co-Production Agreement and Rounderlife License Agreement.

---

[3] While Defendants assert that Plaintiff's change in names from Rounder to Rounderlife was an effort to cut his previous partners out of the business and that the negotiations were always addressing whatever mark was associated with the Rounder magazine, Plaintiff denies such an allegation.

There is also a question of fact regarding whether the Co-Production Agreement and the Rounderlife License Agreement were entered.[4] Gregory McDonald averred that the agreements were never entered, (G. McDonald Decl. ¶ 20), but Plaintiff submitted e-mail evidence that could lead a reasonable jury to believe that the agreements were executed, (*See* Apr. 30, 2009 E-mail, Ex. 5 to SAC, Doc. 61-1 (setting forth a message from Plaintiff stating: "I never received a signed copy of the contract between Compass, Heritage and Evert Caldwell . . . Could you please fax me a signed copy for my records" and Gregory McDonald's reply: "All of my files are packed in Orlando and should be coming next week . . . . You got your original copies on our trip to Tunica when you had that funny girl at the front desk copy and fax them . . . . In the meantime check your suitcase, that[']s where you put them that night"). Therefore, as noted above, the Court must accept the facts in the light most favorable to the Plaintiff and presume, for summary judgment purposes only, that the Co-Production Agreement and the Rounderlife License Agreement were entered.

Around the same time, Gregory McDonald began negotiations with Sitton, (G. McDonald Decl. ¶ 16; Oct. 15, 2008 Sitton E-mail, Ex. E to G. McDonald Decl.), who was the majority shareholder of REI, (Agreement to Reorganize Shareholdings of [REI] ("REI Reorganization Agreement") Ex. 4 to SAC, Doc. 61-1, at 1)[5], which owned the rights to the Rounder trademark, (Oct. 29, 2007 Trademark Assignment, Ex. A to G. McDonald Decl.[6]). Based on those negotiations, Compass and REI entered the REI Reorganization Agreement, pursuant to which, the shares of REI were redistributed, and Compass became the majority shareholder of REI with

---

[4] Whether or not the Co-Production Agreement and the Rounderlife License Agreement, if entered, were valid and whether or not Plaintiff actually had any rights to any purported Rounderlife trademark are equally unclear.

[5] At the time, Sitton owned 51% of REI's shares, Agnew owned 25%, and Plaintiff owned 24%. (REI Reorganization Agreement at 1).

[6] Exhibit A to Gregory McDonald's Declaration contains several documents. The October 29, 2007 Trademark Assignment can be found at electronic filing page numbers 20–21.

a 51% interest.[7] (REI Reorganization Agreement at 1). Thus, there is no question of fact with regard to the Rounder mark—Compass entered the REI Reorganization Agreement and, by obtaining the controlling interest in REI, obtained rights to the Rounder mark.

Thereafter, the parties moved forward with their business venture. (G. McDonald Decl. ¶ 21). Eventually, however, the relationship between Plaintiff and Gregory McDonald turned sour, (*See, e.g.*, Caldwell Decl. ¶¶ 30, 33 (discussing disagreement over frequency of Rounder magazine publication), ¶ 35 (discussing disagreement over compensation); G. McDonald Decl. ¶¶ 28–32 (discussing disagreements over Plaintiff's attendance at an event and compensation)), and all of the Rounder/Rounderlife endeavors ceased. Plaintiff had no contact with Defendants from sometime in 2009 until the filing of this lawsuit. (*See* G. McDonald Decl. ¶¶ 35, 39).

Meanwhile, Gregory McDonald attempted to salvage his investment by bringing in other investors. (G. McDonald Decl. ¶¶ 34–36). As a part of this effort, REI transferred the rights to the Rounder mark to Compass. (G. McDonald Decl. ¶ 35; Nov. 3, 2010 Rounder Trademark Assignment, Ex. A to G. McDonald Decl.[8]). Thereafter, Compass began negotiations with non-party John Stanton. (G. McDonald Decl. ¶ 36). A deal was eventually agreed upon, pursuant to which Compass would license the Rounder trademark to a Stanton-affiliated company—Rounder, Inc.—and Rounder, Inc. would eventually, upon payment of "substantial funds," acquire ownership of certain assets, including the Rounder trademark, (*Id.*; Asset Contribution Agreement, Ex. G to G. McDonald Decl., at 2; Oct. 14, 2011 License Agreement, Ex. H to G. McDonald Decl.). As part of the agreement, Compass was also to obtain shares of stock in Rounder, Inc.

---

[7] Sitton maintained a 24% interest, Agnew maintained a 10% interest, and Plaintiff maintained a 15% interest in REI. (*Id.*).

[8] As noted, Exhibit A to Gregory McDonald's Declaration contains several different documents. The November 3, 2010 Trademark Assignment can be found at electronic filing page numbers 25–26.

(Asset Contribution Agreement at 2). However, this deal was never completed because Stanton was convicted of tax evasion and jailed in 2013. (G. McDonald Decl. ¶ 38).

Plaintiff, proceeding pro se, filed this suit asserting claims for Fraudulent Inducement/ Concealment (Count I, against all Defendants[9]); Breach of Contract (Count II, against Gregory McDonald, Thomas McDonald, and Compass); Unfair Competition and False Designation of Origin under the Lanham Act (Count III, against all Defendants); Civil Conspiracy (Count IV, against all Defendants); Breach of Fiduciary Duty (Count V, against Gregory McDonald, Thomas McDonald, and Compass); Breach of the Covenant of Good Faith and Fair Dealing (Count VI, against Gregory McDonald, Thomas McDonald, and Compass); Negligence (Count VII, against Gregory McDonald, Thomas McDonald, and Compass); Unjust Enrichment (Count VIII, against all Defendants); and Demand for Equitable Accounting/Disgorgement (Count IX, against all Defendants). Plaintiff's Civil Conspiracy claim was previously dismissed with prejudice, and his Lanham Act and Unjust Enrichment claims were limited to events on or after December 18, 2013. (Feb. 23, 2015 Order, Doc. 167, at 10). Defendants now seek summary judgment on all remaining claims.

## II.   MOTION TO STRIKE

In his Motion to Strike, Plaintiff makes numerous objections to information contained in the Declarations of Gregory McDonald, Thomas McDonald, and Kranzdorf. Most of Plaintiff's objections are moot because the Court does not rely on the objected-to portions of the Declarations

---

[9] Defendant Rounder Enterprises, Inc. was previously dismissed, (Feb. 11, 2015 Order, Doc. 160, at 2), and there is a pending motion for default judgment against Defendant Rounder, Inc., (Doc. 171). Accordingly, this Order does not address either of those Defendants, and reference to "Defendants" herein does not include Rounder Enterprises, Inc. or Rounder, Inc.

in addressing Defendants' Motion for Summary Judgment. The Court will address the few relevant objections.

With regard to Plaintiff's objections to paragraphs 7, 8, 11, 16, 28–32, and 39 of Gregory McDonald's Declaration and paragraphs 4 and 6 of Kranzdorf's Declaration, the Court does not rely on the portion of the paragraph to which Plaintiff objects. With regard to Plaintiff's objections to paragraphs 13, 14, 15, and 20 of Gregory McDonald's Declaration, the Court only cites those paragraphs to describe the proposition asserted by Gregory McDonald, not as substantive evidence.

The Court relies on paragraph 22 of Gregory McDonald's Declaration for the proposition that Compass is associated with Gregory McDonald's family. Contrary to Plaintiff's objection, this is something that is within Gregory McDonald's personal knowledge and to which he is permitted to testify. Plaintiff's objections as to paragraph 36 of Gregory McDonald's Declaration are unclear. It appears that Plaintiff is arguing that Gregory McDonald is required to have additional evidence, beyond his testimony, to support facts that are within Gregory McDonald's personal knowledge. This proposition is incorrect. Additionally, Gregory McDonald can testify regarding his own understanding of the situation and the reasons he initiated certain negotiations. Therefore, to the extent Plaintiff objects to the portions of paragraph 36 relied upon by the Court, those objections are overruled. Plaintiff's similar objections to paragraph 38 of Gregory McDonald's Declaration are overruled for the same reasons. Insofar as Plaintiff claims paragraph 38 is vague and conclusory because it refers to the "agreements" with Stanton, that objection is also overruled. Taken in the context of the Declaration, it is perfectly clear to which agreements Gregory McDonald is referring. Similarly, the reference to "business losses" in paragraph 40 is not vague, speculative, or conclusory.

Therefore, all of Plaintiff's objections in his Motion to Strike are either moot or overruled, and the Motion to Strike will be denied accordingly.

## III.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment," the nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251–52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV.    BURDEN OF PROOF

As an initial matter, the Court deems it necessary to discuss the burden of proof in light of Plaintiff's arguments that Defendants have failed to prove certain facts and his confusing

statements with regard to a lack of material facts at issue. First, while it is true that the parties seeking summary judgment—here Defendants—have the burden to show that there is not an issue of material fact, that does not transfer the burden to Defendants to disprove Plaintiff's claims. *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1542–43 (11th Cir. 1990) ("Under the clear dictates of *Celotex v. Catrett*, 477 U.S. 317 (1986), . . . the moving party is not required to negate the nonmovant's claim."). The burden of proving the claims asserted in the SAC is, and always remains, on Plaintiff. The law is clear: upon a proper motion, the entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Here, Defendants Motion for Summary Judgment asserts that Plaintiff failed to present evidence as to essential elements of all of his alleged claims. Plaintiff responded primarily by arguing that Defendants failed to prove that they were not liable. Such an argument is insufficient to overcome Defendants' Motion for Summary Judgment. Furthermore, where Plaintiff fails to offer evidence sufficient to establish an element of his claim, Defendants have met their burden to show there is no genuine issue of material fact because "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. With that framework in mind, the Court will address each of Plaintiff's claims.

## V.   ANALYSIS

### A.   Claims Against Kranzdorf

While the below analysis with regard to each claim applies equally to Defendant Jeffery Kranzdorf, it is worth noting that Plaintiff has entirely failed to present any evidence with regard

to Kranzdorf. There are four claims remaining against Kranzdorf: Fraudulent Inducement/Concealment; Lanham Act; Unjust Enrichment; and Equitable Accounting. The only evidence on the record with relation to Kranzdorf is that he was a lawyer for Gregory McDonald and Compass and that he drafted several of the agreements, including the Co-Production Agreement, the Rounderlife License Agreement, and the REI Reorganization Agreement.[10] (Kranzdorf Decl., Doc. 172, ¶¶ 2–5). As articulated by Kranzdorf, Plaintiff has failed to present any evidence that Kranzdorf made any fraudulent misrepresentations or concealed any material facts, that Kranzdorf ever used or was associated in any way with the Rounderlife mark, that Plaintiff conferred any benefit on Kranzdorf, or that there is any basis for an equitable accounting with regard to Kranzdorf.[11] Thus, Kranzdorf is entitled to summary judgment with regard to all of the claims against him.

### B.  Fraudulent Inducement

To prevail on his claim for fraudulent inducement, Plaintiff must establish: "(1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment." *Prieto v. Smook, Inc.*, 97 So. 3d 916, 917 (Fla. 4th DCA 2012) (quotation omitted); *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808–09 (11th Cir. 2010).

Plaintiff alleges that he was shown promotional materials, including a video "purporting to display the accomplishments of Greg McDonald's related entities, [Compass] and [Heritage]" and

---

[10] To the extent Plaintiff asserts that Kranzdorf did not draft the above-referenced agreements based on previous answers to interrogatories, that argument can only further demolish Plaintiff's claims against Kranzdorf by establishing that Kranzdorf had even less involvement in the Rounder/Rounderlife activities.

[11] The specific elements of each claim will be addressed below.

that the materials contained false statements. (SAC, Doc. 61, ¶¶ 28–29). Plaintiff has provided evidence that Gregory McDonald e-mailed Plaintiff a link for "promos." (Oct. 3, 2008 E-mail, Ex. 4 to Pl.'s Resp. to Mot. Summ. J., Doc. 175-3). However, Plaintiff has failed to provide the video, any other alleged promotional materials, or any evidence of statements contained within the videos or promotional materials, much less evidence that such statements were false.

Plaintiff also asserts that Gregory McDonald failed to disclose that Compass was not formed at the time that the Co-production and Licensing Agreements were entered. (*See* Caldwell Decl. ¶ 21 ("No mention was made verbally or in any agreement that Compass was a to-be formed entity."). While "[f]raud may be based on . . . an omission of material fact," in an arms-length transaction, an omission is not actionable if the "truth might have been discovered by the exercise of ordinary diligence." *JDI Holdings, LLC v. Jet Mgmt., Inc.*, 732 F. Supp. 2d 1205, 1233 (N.D. Fla. 2010) (quotation omitted); *see also Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009) ("Generally, in an arms-length transaction, . . . there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence[,] have discovered." (quotation omitted)). Plaintiff could have unquestionably determined that Compass was not yet formed by conducting a simple online search, which would certainly be considered ordinary diligence.

Finally, Plaintiff asserts that it was fraudulently induced to enter the contracts based on the premise that Compass was registered in Florida (as indicated in the Trademark Agreement), when it was actually registered in Nevada. Plaintiff has failed to explain how this representation was material to the transaction. "[A] fact is material when if the representation had not been made, the contract or transaction would not have been entered into. Conversely, a representation is not material when it appears that the contract or transaction would have been entered into

notwithstanding it." *Morris v. Ingraffia*, 18 So. 2d 1, 3 (Fla. 1944). Plaintiff has not presented even a scintilla of evidence to support a claim that he would not have entered into the contracts if he had known that Compass was a Nevada, rather than Florida, company. Thus, a reasonable jury could not conclude that such a fact was material.

Accordingly, Plaintiff has failed to establish essential elements of his fraudulent inducement claim, and Defendants are entitled to summary judgment on that claim.

### C.    Breach of Contract

Plaintiff asserts that Gregory McDonald, Thomas McDonald, and Compass breached the Co-Production Agreement by failing to compensate Plaintiff thereunder. To prevail on a breach of contract claim, Plaintiff must establish the following elements: (1) a valid contract; (2) a material breach; (3) causation; and (4) damages. *Handi-Van, Inc. v. Broward Cnty.*, 116 So. 3d 530, 541 (Fla. 4th DCA 2013); *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000).

As an initial matter, to the extent the agreements were entered, the only Defendant that is a party to the Co-Production Agreement and the Rounderlife License Agreement is Compass. Plaintiff has offered no evidence to support a contention that Gregory McDonald or Thomas McDonald could be held personally liable for breaches of these agreements. Accordingly, Thomas McDonald and Gregory McDonald are entitled to summary judgment as to the breach of contract claim. As set forth below, Compass is also entitled to summary judgment.[12]

The Co-Production Agreement requires that "[a]ll [p]rograms produced under the [Rounderlife License Agreement] shall be owned and net receipts . . . shall be divided evenly (1/3

---

[12] Even if Thomas or Gregory McDonald were bound by the agreements at issue, they would still be entitled to summary judgment for the same reasons as Compass.

each) between and among Compass, Heritage and [Plaintiff]." (Co-Production Agreement at 1). While Plaintiff avers that he was paid approximately $3,000.00 in connection with programs involving either Rounder or Rounderlife, (Caldwell Decl. ¶ 38), Plaintiff has failed to provide any evidence that Defendants made any "net receipts" whatsoever in connection with the use of the Rounderlife mark. At most, Plaintiff averred that he "sold tens of thousands of dollars worth of advertising on behalf of Rounder Enterprises after the Defendants assumed control,"[13] (*id.*), while Defendants have submitted evidence that Defendants "suffered business losses of over $1,000,000 in out-of-pocket expenditures," (G. McDonald Decl. ¶ 40). Thus, there is no evidence that Compass breached the Co-Production Agreement by failing to pay Plaintiff one-third of the "net receipts" because there is no evidence that revenues exceeded expenditures. To the contrary, the evidence presented indicates that the business venture contemplated by the Co-Production Agreement lost a significant amount of money.

Plaintiff also attempts to show damages by arguing that he was not given shares of stock in Rounder, Inc. First, Plaintiff has not shown that such a failure would have been a breach of the Co-Production Agreement or the License Agreement. The Asset Contribution Agreement with Rounder, Inc. involved the sale of REI's assets, which included the "Rounder" trademark. It in no way implicated the Rounderlife mark, and therefore, any consideration from the Asset Contribution Agreement were not due to Plaintiff under the Co-Production Agreement.[14] Moreover, the evidence indicates that the Asset Contribution Agreement fell through and that

---

[13] The Court notes that this income was on behalf of "Rounder Enterprises," referred to herein as REI—the company that owned the rights to the "Rounder" mark—which was presumably not in connection with the "Rounderlife" mark. This is one of many examples where the parties treat the Rounderlife mark as a variant on the Rounder mark.

[14] Plaintiff does not assert a breach of the REI Reorganization Agreement, and even if he did, REI, not Plaintiff, is party to that Agreement, and Plaintiff has provided no basis upon which he would have standing to vindicate REI's rights.

Rounder, Inc. is now defunct after its principle was convicted for tax evasion, rendering those shares of Rounder, Inc. worthless.

Thus, Plaintiff has not provided evidence that there were any "net receipts" to be shared, and he has therefore failed to establish that Compass breached the Co-production Agreement.

### D.   Unjust Enrichment

"The elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004) (quotation omitted). For the same reason Plaintiff has failed to establish damages on the breach of contract claim, Plaintiff's unjust enrichment claim fails. Plaintiff has failed to show that he conferred any benefit on Defendants. While Plaintiff avers that he put forth effort to make the various Rounder/Rounderlife endeavors profitable, he not established that those efforts were directed at benefitting Defendants or that they actually did so. Indeed, as noted in the breach of contract section, the evidence indicates that the Rounder and Rounderlife projects lost a substantial amount of money. Further, the circumstances do not make it inequitable for Defendant to retain whatever "benefit" was conferred by Plaintiff's work. Viewing the evidence in the light most favorable to Plaintiff, the parties were involved in a project that they all had undertaken with the agreement that they would share in fruits of the project. That agreement carried with it the understanding that if the project failed, no one will be compensated for their sweat equity.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's unjust enrichment claim.

### E.   Breach of Covenant of Good Faith and Fair Dealing

"Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract." *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001); *see also Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997) ("[E]very contract includes an implied covenant that the parties will perform in good faith."). However, "the rights conferred by the implied covenant of good faith and fair dealing are limited." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999). An "action for breach of the implied covenant of good faith cannot be maintained in the absence of breach of an express contract provision." *Id.* (citing *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998)).

As discussed in the analysis of the breach of contract claim, Plaintiff has failed to provide any basis to hold Gregory McDonald or Thomas McDonald liable for breaches of the Co-Production Agreement and the Rounderlife License Agreement. Thus, Gregory McDonald and Thomas McDonald are entitled to summary judgment with regard to this claim as well.

To the extent Plaintiff argues that Compass breached the implied covenant of good faith and fair dealing in connection with failing to compensate Plaintiff under the agreement, this Court has already determined that Plaintiff has failed to show that Compass breached that provision. Insofar as Plaintiff argues that the Co-Production Agreement granted the authority to Compass to exercise discretion in producing programs under the Agreement and that Compass did not act in good faith in exercising that discretion, Plaintiff's argument also fails.

The Co-Production Agreement states, "[A]ll final decisions (both creative and business) shall be made solely by Compass in the person of Greg McDonald or such person(s) as he may designate." (Co-Production Agreement at 1). To the extent this provision grants Compass discretion in performing tasks under the Co-Production Agreement, Plaintiff has failed to establish

that Compass did not act in good faith in doing so. The only evidence the Court can glean from a thorough review of the record to support Plaintiff's claim is Plaintiff's sworn statement that Gregory McDonald, on behalf of Compass and REI, determined that they would cut back on the publication of Rounder Magazine to quarterly for 2009.[15] (Caldwell Decl. ¶ 30). While Plaintiff clearly disagreed with this decision, (*see id.* at ¶ 33), he has not established that it was unreasonable for Compass to exercise its discretion in such a manner. *See Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001) ("'Unless no reasonable party . . . would have made the same discretionary decision . . . , it seems unlikely that [the party's] decision would violate the covenant of good faith.'" (quoting *Sepe v. City of Safety Harbor*, 761 So. 2d 1182, 1185 (Fla. 2d DCA 2000)). Accordingly, Plaintiff has failed to establish a genuine dispute regarding whether Defendants violated the implied covenant of good faith and fair dealing.

### F.   Breach of Fiduciary Duty

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Plaintiff alleges that Defendants Gregory McDonald, Thomas McDonald, and Compass had a fiduciary duty with regard to Plaintiff arising from their joint venture related to the Rounder-brand. Plaintiff alleges that those Defendants breached their duty by "[f]ailing to apprise Plaintiff of agreements entered into that affect[ed] the Joint Venture"; "[f]ailing to pay the obligations of the Joint Venture"; "[a]cting in their own best interests at the expense of the Joint Venture"; "[a]cting in [their] own best interests at the expense of [Plaintiff]"; and "[f]ailing to properly account to Plaintiff or pay his rightful share." (SAC ¶ 92).

---

[15] The Court notes that Plaintiff made additional allegations relating to the alleged breach of good faith and fair dealing, (SAC ¶ 100); however, Plaintiff has not offered any evidence in support of such allegations.

Assuming that Plaintiff has established the existence of a fiduciary duty on behalf of each of the Defendants named in this count, Plaintiff has failed to provide any evidence of breach or damages. Even after an independent review of all of the evidence submitted by Plaintiff—none of which Plaintiff cited in support—the Court cannot discern any evidence to support Plaintiff's claim for breach of fiduciary duty.

As noted in the breach of covenant of good faith and fair dealing claim, Plaintiff asserts that Gregory McDonald improperly decided to limit the publication of Rounder Magazine to quarterly for the remainder of 2009, but Plaintiff has failed to show that such a decision was not in the best interests of the joint venture. As to the assertion that Defendants failed to pay obligations of the joint venture, Plaintiff only offers a conclusory statement in his Declaration that "sub contractors who performed work during [an event] . . . sent emails claiming they had not been paid." (Caldwell Decl. ¶ 34). This statement fails to establish that any of the Defendants named in this count actually failed to pay the obligations of the joint venture; there is no evidence of which subcontractors claimed to have not been paid, nor is there evidence of when those contractors were supposed to receive payment, that payments were late, or that payments were never made. Even if Plaintiff had established a breach as to these two allegations, Plaintiff has failed to offer any evidence that these two incidents personally damaged Plaintiff in any way.

With regard to Plaintiff's allegation that the relevant Defendants breached their fiduciary duties by failing to account and pay Plaintiff appropriately, Plaintiff has offered no evidence of what accounting was required and what accounting was or was not provided. Moreover, as discussed previously, the record evidence indicates that the purported joint venture made no profit. Therefore, there was no breach of any duty to pay Plaintiff because, as asserted by Plaintiff, that duty stemmed from the joint venture actually making a profit.

Accordingly, Plaintiff has failed to establish a claim for breach of fiduciary duty.

### G.    Lanham Act

Plaintiff brings a claim for unfair competition and false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[16] It is undisputed that the Rounderlife mark is not registered. Thus, Plaintiff asserts common law trademark rights.[17]

Section 43(a) "forbids unfair trade practices involving infringement of trade dress, service marks, or trademarks, even in the absence of federal trademark registration." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). To prevail on a section 43(a) claim, Plaintiff must establish "(1) that [he] had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (quotation

---

[16] Section 43(a) of the Lanham Act provides, in relevant part:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

[17] Although it appears that Plaintiff has abandoned his Lanham Act claims with regard to the Rounder mark, to the extent that he has not, those claims fail. As an initial matter, Plaintiff has failed to establish that he has standing to bring infringement claims with regard to the Rounder mark. As noted previously, the evidence indicates that REI and, subsequently, Compass were the owners of the mark, not Plaintiff. In addition, Compass has established its right to use the mark, first as the primary shareholder of REI and then as the owner of the mark.

omitted). Further, the unauthorized use of the mark must be "'in connection with . . . goods or services . . . use[d] in commerce.'" *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1250 (11th Cir. 2009) (per curiam) (quoting 15 U.S.C. § 1125(a)(1)).

As set forth in this Court's February 23, 2015 Order (Doc. 167), Plaintiff does not have standing to assert Lanham Act claims for alleged infringement prior to December 18, 2013, when Plaintiff obtained his purported rights in the Rounderlife mark. (*Id.* at 9). Plaintiff has failed to establish that Defendants made "use" of the Rounderlife mark on or after December 18, 2013; therefore, Defendants are entitled to summary judgment as to the Lanham Act claim.

The only evidence Plaintiff has submitted regarding any use of the Rounderlife mark on or after December 18, 2013, is that, as of March 26, 2015, Compass remained the registrant of the domain name RounderLife.net and that, after December 31, 2013, the website RounderLife.com existed.[18] (Caldwell Decl. ¶ 48; *see also* Whois Record for RounderLife.net, Ex. 14 to Pl.'s Resp.to Mot. Summ. J., Doc. 175-3; Screenshot of RounderLife.com, Ex. 15 to Pl.'s Resp. to Mot. Summ. J., Doc. 175-3). In his Declaration, Plaintiff treats the RounderLife.net domain name as though it is the same as the RounderLife.com domain name. However, Plaintiff has offered no proof that those two sites are related or that any Defendant has any connection to the latter. Regardless, even if Compass or one of the other Defendants registered the RounderLife.com website in addition to the RounderLife.net site, Plaintiff has failed to establish that either was used in commerce on or after December 18, 2013.

The domain registration for RounderLife.net does not show that the website was active or that the site contained any contents. (Whois Record for RounderLife.net). Additionally, the

---

[18] Plaintiff also alleged that Defendants misrepresented themselves as the developers of the Rounderlife brand, but Plaintiff has not submitted any evidence in support of such a claim.

RounderLife.com screenshot provided by Plaintiff states that the website is down. (Screenshot of RounderLife.com). Thus, at most, Plaintiff has shown that the domain names were registered to Compass, which is insufficient to establish liability. *Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D.*, P.A., 734 F. Supp. 2d 1262, 1272 n.21 (M.D. Fla. 2010) (stating that "registration of a domain name, without more, does not constitute commercial use" and collecting cases). Specifically, Plaintiff has failed to offer any evidence that either website was active in any manner, much less that they sold or advertised any goods or services. *See S. Grouts & Mortars*, 575 F.3d at 1250. (holding that "[b]ecause [Defendant's allegedly infringing] domain name does not sell or advertise any goods or services, no use of it in commerce is readily apparent"); *Anheuser-Busch, Inc. v. A-B Distribs., Inc.*, 910 F. Supp. 587, 591 (M.D. Fla. 1995) (determining that the plaintiff failed to establish a violation of the Lanham Act where the defendant's trucks parked outside its beer distribution business had the plaintiff's trademark printed on them, but where the business was no longer operating). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's Lanham Act claim.

### H.     Negligence

"To maintain an action for negligence, a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 204 (Fla. 2007). Defendant argues that Plaintiff has failed to establish any of the elements of negligence.

As an initial matter, the negligence claim set forth in the SAC is nearly incomprehensible. The gist of Plaintiff's claim seems to be that Gregory McDonald, Thomas McDonald, and Compass failed to properly run REI and failed to file the appropriate corporate paperwork with the South Carolina Department of State. (*See* SAC ¶¶ 104–111). Even assuming Plaintiff had

established a duty on behalf of these Defendants, Plaintiff has offered no evidence to support his claim that they failed to take necessary action on behalf of the corporation or that any purported action or inaction resulted in any damages to Plaintiff. Plaintiff's complete lack of evidence with regard to his negligence claim requires a grant of summary judgment in favor of Defendants.

## I.        Equitable Accounting

Although Plaintiff has alleged an independent claim for equitable accounting, "accounting is best understood as a *remedy* for a cause of action, not as a cause of action in its own right." *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1310 n.21 (11th Cir. 2014). Accordingly, an accounting is not available "absent some independent cause of action." *Johnson v. Pullman, Inc.*, 845 F.2d 911, 913 (11th Cir. 1988); *see also Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007) ("[A]n accounting is a remedy attached to a separate independent cause of action.") *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). Because Defendant has been granted summary judgment as to all of Plaintiff's other claims, Plaintiff has no independent cause of action under which it can obtain the remedy of accounting. Therefore, Defendant is also entitled to summary judgment with regard to Plaintiff's request for accounting.

## VI.    CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 173) is **GRANTED**.

2. Plaintiff's Motion to Disregard Declarations Supporting Defendants' Motion for Summary Judgment (Doc. 174) is **DENIED in part** and **DENIED as moot in part**.

3. The Clerk is directed to enter judgment in favor of Defendants Compass Entertainment Group, LLC, Thomas A. McDonald, Gregory T. McDonald, and

Jeffrey P. Kranzdorf, providing that Plaintiff shall take nothing on any of his claims against those Defendants.

4. Because the only remaining issue in this case is the motion for default judgment (Doc. 171) against Rounder, Inc., this case is **REMOVED** from the January trial term, and the trial status conference, set for December 17, 2015, is **CANCELLED**.

**DONE** and **ORDERED** in Orlando, Florida on December 15, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party